ORIGINAL

# In the United States Court of Federal Claims

No. 17-0179 C

(Filed: April 4, 2017)

**FILED**
APR - 4 2017
U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| JULIE A. BEBERMAN, ) ) Plaintiff, ) ) v. ) ) THE UNITED STATES, ) ) Defendant. ) | Pro Se; Equal Pay Act; 29 U.S.C. § 206(d) (2012); Lack of Subject Matter Jurisdiction; 28 U.S.C. §1500 (2012); RCFC 12(h)(3). |

ORDER

    Pro se plaintiff, Julie Beberman, an employee of the United States Department of State (State Department), brings this action under the Equal Pay Act of 1963 (Equal Pay Act), Pub. L. No. 88–38, § 3(d), 77 Stat. 56 (codified at 29 U.S.C. § 206(d) (2012)), alleging gender-based discrimination in pay and benefits. See Compl. (2017 CFC Compl.) ¶¶ 1, 25, 29, ECF No. 1. Ms. Beberman alleges that the government discriminated against her by paying her less and providing her with fewer benefits than a similarly situated male employee within the State Department. Id. ¶¶ 19-26. Ms. Beberman seeks "back pay, liquidated damages, benefits, interest, and injunctive relief." Id. ¶ 1.

    As outlined below, 28 U.S.C. § 1500 bars jurisdiction in this court because (1) Ms. Beberman has an earlier-filed pending action against the State Department in the United States District Court for the District of the Virgin Islands (district court), and (2) the claims in the district court arise from the same operative facts as the claims asserted in this court. See 28 U.S.C. §1500 (2012). In accordance with rule 12(h)(3) of the Rules of the United States Court of Federal Claims (RCFC), Ms. Beberman's complaint is **DISMISSED** sua sponte for lack of jurisdiction.

1

I.  Background[1]

Ms. Beberman is employed by the State Department as a non-tenured member of the Foreign Service. 2017 CFC Compl. ¶¶ 3, 5. Upon entry to the Foreign Service, employees serve under a limited appointment for a trial period not to exceed five years, 22 U.S.C. §§ 3946(a), 3949(a) (2012), during which a commissioning and tenure board recommends whether an employee should receive tenure and a career appointment. See 22 U.S.C. § 3946(b); 3 Foreign Affairs Manual § 2245 (available at https://fam.state.gov). In March 2016, Ms. Beberman was serving at Embassy Malabo in Equatorial Guinea, where she allegedly "received overseas comparability pay, hardship pay, service needs differential, a cost of living allowance, housing, substantial overtime compensation, and was eligible to participate in … the student loan repayment program." 2017 CFC Compl. ¶ 9.

On March 27, 2016, Ms. Beberman's limited career appointment expired without an offer of tenure. Id. ¶ 6. Thereafter, the State Department placed Ms. Beberman on a "Separation Order" and directed her to return to Washington, D.C. before the scheduled completion of her assignment at Embassy Malabo. Id. ¶¶ 10-11. Ms. Beberman alleges that she did not receive an overnight stop, home leave, a temporary quarters service allowance, or the opportunity to retrieve her household effects. Id. ¶¶ 11-14, 34. Ms. Beberman further alleges that she did not initially receive "Washington locality pay or a transit subsidy" upon returning to Washington, D.C. and "was not initially given a formal Washington assignment." Id. ¶ 15-16.

   A.  CFC Litigation

On August 15, 2016, Ms. Beberman brought her first action in this court under the Equal Pay Act. See Beberman v. United States, No. 16-1006 (Fed. Cl. Aug. 15, 2016) (2016 CFC Compl.). Therein, she made a claim that is virtually identical to her instant complaint, as outlined below.

Ms. Beberman alleged that the government discriminated against her on the basis of sex by paying her at a lower rate and providing her with fewer benefits than were provided to a similarly situated male employee. 2016 CFC Compl. ¶¶ 21-23; 2017 CFC Compl. ¶¶ 25-28. Specifically, Ms. Beberman alleged that a male Foreign Service employee's limited appointment also terminated on March 27, 2016 without a recommendation of tenure, but the State Department allowed that employee to remain overseas and retain overseas benefits until the completion of his assignment, even though the employee and Ms. Beberman allegedly are of equal rank and have similar

---

[1]  The facts recited here are taken from the complaint. The court makes no finding of fact in this opinion.

2

responsibilities. 2016 CFC Compl. ¶¶ 12-17, 22-23; 2017 CFC Compl. ¶¶ 7, 17-20, 27-28. Ms. Beberman further alleged that after completing his assignment and returning to the United States, the male employee was immediately granted Washington locality pay and was eligible for a transit subsidy. 2016 CFC Compl. ¶ 20; 2017 CFC Compl. ¶ 23.

As in the instant complaint, Ms. Beberman requested that the court reinstate her to service at the embassy in Equatorial Guinea until the scheduled completion of her assignment there. 2016 CFC Compl. ¶ 26; 2017 CFC Compl. ¶ 38. Ms. Beberman further requested back pay for the benefits she lost when reassigned, repayment for transit subsidies she did not immediately receive upon her return to Washington, D.C., and back pay for the temporary quarters service allowance she was denied upon being placed on separation orders and leaving Equatorial Guinea. 2016 CFC Compl. ¶ 27; 2017 CFC Compl. ¶ 40.

On December 8, 2016, the Court of Federal Claims determined that Ms. Beberman's 2016 complaint was barred under 28 U.S.C. § 1500 by a prior suit filed in May 2014 against the State Department in the district court, based on a finding that the two suits arose from the same operative facts. Beberman v. United States, 129 Fed. Cl. 539, 547 (2016).

B.  District Court Litigation and Appeal

On May 9, 2014, Ms. Beberman initiated an action in the district court against the State Department, alleging, among other things, gender discrimination[2] under Title VII of the Civil Rights Act of 1964, Pub. L. No. 88-352, § 717, 78 Stat. 241, as amended by the Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, 86 Stat. 103, 111, and age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 633a (2012). See Compl., Beberman v. U.S. Dep't of State, et al., No. 14-0020 (D.V.I. May 22, 2014) (Beberman D.V.I. or D.V.I.).

On May 22, 2014, Ms. Beberman filed her first amended complaint, alleging that she began her career at the State Department in January 2010, and was assigned to work at the United States Embassy in Caracas, Venezuela in October 2011. D.V.I. First Compl. ¶¶ 13, 62. On July 26, 2012, Visa Chief Eric Cohan became Ms. Beberman's immediate supervisor, id. ¶ 70, and Ms. Beberman alleges that Mr. Cohan repeatedly engaged in discriminatory behavior against her on the basis of her "age and gender" while she was serving in Caracas, Venezuela. See id. ¶¶ 70-93.

On March 18, 2016, after moving to Equatorial Guinea, and while her 2014 complaint was still pending, Ms. Beberman learned that the board had denied her tenure.

---

[2]  Ms. Beberman later withdrew the gender discrimination claim in her first amended complaint.

3

See Beberman D.V.I., ECF No. 56. Ms. Beberman then filed a motion for a temporary restraining order or preliminary injunction, in which she requested that the district court direct the State Department to retain her "in her current assignment at the U.S. Embassy in Malabo, Equatorial Guinea until she fulfills her assignment in December 2017." Id. at 1. In her motion, Ms. Beberman argued that Mr. Cohan's "discriminatory animus" "based on her age and gender" was reflected in an annual employee evaluation report drafted during the time that he supervised Ms. Beberman, id. at 2, and that the board subsequently denied her tenure because of that negative review. Id. ("the facts would show that the negative EER was motivated by Cohan's discriminatory intent [] and that the discriminatory animus . . . proximately caused the [Commissioning and Tenure Board] to deny Beberman tenure."). In further support of the motion, Ms. Beberman argued that a departure from Equatorial Guinea would result in "irreparable harm" because she would be required to "pack up her belongings," "leave her residence," "return to Washington, D.C.," and because she would "lose substantial benefits, including, but not limited to, the hardship pay . . . service[-]needs differential, and access to the Student Loan Repayment Program." Id. at 5.

On March 24, 2016, the district court denied Ms. Beberman's motion for a temporary restraining order, see Beberman D.V.I., ECF No. 74, and Ms. Beberman moved for reconsideration. See Beberman D.V.I., ECF No. 76. On April 4, 2016, the district court denied Ms. Beberman's motion for reconsideration. See Beberman D.V.I., ECF No. 85.

In response, Ms. Beberman filed an immediate notice of appeal and an urgent motion for an injunction with the United States Court of Appeals for the Third Circuit. See Beberman D.V.I. ECF No. 87; Beberman v. U.S. Dep't of State, No. 16-1788 (3d. Cir. Apr. 4, 2016). On April 5, 2016, the Third Circuit denied Ms. Beberman's urgent motion because she failed to demonstrate that irreparable harm would be caused by her reassignment. Beberman v. U.S. Dep't of State, No. 16-1788 (3d Cir. Apr. 5, 2016) ("[f]or substantially the reasons set for by the District Court, [Ms. Beberman] failed to demonstrate irreparable harm."). Following that decision, the government filed a motion to dismiss Ms. Beberman's complaint in the district court. See Beberman D.V.I., ECF No. 92. On July 19, 2016, the district court stayed the proceedings to allow for resolution of the appeal before the Third Circuit. See Beberman D.V.I., ECF No. 97.

On September 7, 2016, Ms. Beberman filed a fourth motion to amend her complaint with the district court, followed by a motion to lift the stay for the limited purpose of the court ruling on her motion to amend. See Beberman D.V.I., ECF Nos. 98, 100. On November 8, 2016, the district court granted Ms. Beberman's motions and

accepted her fourth amended complaint. See Order, Beberman D.V.I., ECF No. 102.[3] On March 6, 2017, the Third Circuit affirmed the district court's orders denying Ms. Beberman's motion for preliminary injunction and subsequent motion for reconsideration. Beberman v. U.S. Dep't of State, No. 16-1788 (3d Cir. Mar. 6, 2017).

At present, Ms. Beberman's 2014 case remains pending in the district court. This court must therefore determine whether that suit still bars jurisdiction over the present action under § 1500. See Beberman, 129 Fed. Cl. at 547.

II.  Legal Standards

The Court of Federal Claims is a court of limited jurisdiction. Jentoft v. United States, 450 F.3d 1342, 1349 (Fed. Cir. 2006) (citing United States v. King, 395 U.S. 1, 3 (1969)). The Tucker Act confers upon the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). The Court of Federal Claims "may not entertain claims outside this specific jurisdictional authority." Adams v. United States, 20 Cl. Ct. 132, 135 (1990) (citation omitted).

Congress has carved out an additional exception within the court's grant of subject-matter jurisdiction in 28 U.S.C. § 1500. Section 1500 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. When § 1500 applies, this court lacks jurisdiction and must dismiss the complaint. See id.; United States v. Tohono O'Odham Nation, 563 U.S. 307, 314, 318 (2011); see also RCFC 12(h)(3).

To determine whether § 1500 applies, a court must answer two questions in the affirmative: "(1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in

---

[3] On November 8, 2016, Ms. Beberman filed a fifth motion to amend her complaint that remains pending. See Beberman v. U.S. Dep't of State, No. 14-0020 (D.V.I. Nov. 8, 2016), ECF No. 102. As of the date of this filing, plaintiff's fourth amended complaint is operative.

5

respect to' the same claim or claims asserted in the later-filed action in [this court]." Brandt v. United States, 710 F.3d 1369, 1374 (Fed. Cir. 2013) (citing Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163–64 (Fed. Cir. 2011)). As to the first question, a claim is "pending" from the time that it is filed until a final judgment is entered, and begins pending once again when a motion for reconsideration or a notice of appeal is filed. Id. at 1379–80. As to the second question, courts must distinguish between operative facts and background facts; only those facts that "are critical to plaintiffs' claims in both actions" are relevant. See Central Pines Land Co. v. United States, 697 F.3d 1360, 1364-65 (Fed. Cir. 2012). The Supreme Court has held that, "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in [this court], if they are based on substantially the same operative facts, regardless of the relief sought in each suit," Tohono, 563 U.S. at 317, or the legal theories asserted, Keene Corp. v. United States, 508 U.S. 200, 210 (1993).

III. Discussion

    A. <u>An Earlier-Filed Suit Is Pending In The District Court</u>

In this case, the first prong of the test under § 1500 is clearly satisfied. Ms. Beberman has pending a suit against the State Department in the district court that was filed more than two years before she initiated her complaint with this court. There can be no reasonable dispute that there is "an earlier-filed 'suit or process' pending in another court." Brandt, 710 F.3d at 1374.

    B. <u>The District Court Suit Is For Or In Respect To The Same Claims At Issue In This Action</u>

The second prong of this test is also satisfied for the same reasons painstakingly detailed in the court's December 2016 opinion, namely that the two suits are based on the same operative facts: Ms. Beberman's departure from Equatorial Guinea, the loss of overseas benefits, the lack of local benefits upon her return to Washington, D.C., and the State Department's alleged discriminatory basis. See Beberman, 129 Fed. Cl. at 546-47. Ms. Beberman's allegations and arguments in the district court action clearly demonstrate that her two suits are based substantially on the same allegations of government conduct repackaged into different legal theories in each case.

Throughout the course of her district court litigation, Ms. Beberman has repeatedly argued that Mr. Cohan's "discriminatory animus" reflected his bias against Ms. Beberman based on her "age and gender." Beberman D.V.I., Fourth Am. Compl. ¶¶ 95, 103-08, 110, 113, ECF No. 98. Ms. Beberman asserts that this discriminatory treatment led directly to the board's decisions to deny her tenure and place her on

6

separation orders, D.V.I. Fourth Am. Compl. ¶¶ 95, 111-13, in retaliation for bringing her claims of discrimination in district court. D.V.I. Fourth Am. Compl. ¶¶ 49, 50, 92, 94. Finally, she alleges that, the State Department retaliated against her by treating her differently than another foreign service employee who: (1) was denied tenure on March 27, 2016; (2) was permitted to remain in his overseas assignment; and (3) received permanent change of station orders to his new assignment in Washington, D.C. D.V.I. Fourth Am. Compl. ¶¶ 149-52.

In the instant litigation, Ms. Beberman challenges the same government conduct that she challenged in her district court action: the receipt of separation orders and the transfer from the Embassy Malabo to Washington, D.C. following her tenure denial. In the district court, Ms. Beberman alleges that her separation orders and return to Washington, D.C. were part of the State Department's retaliation against her for turning down an offer of settlement in mediation and bringing an ADEA claim alleging age discrimination. D.V.I. Fourth Am. Compl. ¶¶ 49, 152. Here, Ms. Beberman characterizes the separation orders and the subsequent return to Washington, D.C. as a violation of the Equal Pay Act alleging gender discrimination. 2017 CFC Compl. ¶¶ 25, 29.

Similarly, she points to the difference in treatment of another Foreign Service employee as evidence of retaliation for her ADEA claim in the district court action, D.V.I. Fourth Am. Compl. ¶ 152, and as a violation of the Equal Pay Act in this Court, 2017 CFC Compl. ¶¶ 31-32. In both suits, she has alleged that she will establish the following facts, in particular that the other foreign service employee: (1) had his limited career appointment expire on the same day as Ms. Beberman, 2017 CFC Compl. ¶ 7; D.V.I. Fourth Am. Compl. ¶149; (2) was permitted to remain in his overseas assignment while she was not allowed to complete her assignment, 2017 CFC Compl. ¶¶ 19-20; D.V.I. Fourth Am. Compl. ¶¶ 150-51; and (3) received permanent change of station orders to his new assignment in Washington, D.C. while Ms. Beberman was placed on separation orders, 2017 CFC Compl. ¶¶ 21-24; D.V.I. Fourth Am. Compl. ¶¶150-51.

It is readily apparent when comparing both of Ms. Beberman's complaints that the same facts "are critical to plaintiff[']s claims in both actions." See Central Pines Land Co. v. United States, 697 F.3d 1360, 1364-65 (Fed. Cir. 2012). Thus, the operative facts are the same; specifically, "Ms. Beberman's claims center on Ms. Beberman's departure from her post in Equatorial Guinea before the completion of her assignment, and whether such departure was the result of wrongful conduct by the State Department." Beberman, 129 Fed. Cl. at 547. "Further, Ms. Beberman supports both suits by alleging that she has suffered harm as a result of her departure, specifically through the loss of hardship pay, service-needs differential, and student loan repayments, as well as the lack of local benefits in Washington, D.C." Id. Finally, the relief sought by Ms. Beberman in both courts is the same in that she seeks immediate reinstatement at Embassy Malabo with

reinstatement of the benefits associated with that post, back pay, repayment of transit subsidies, and liquidated damages. 2017 CFC Compl. ¶¶ 38, 40; D.V.I. Fourth Am. Compl. at 22-23.

At best, Ms. Beberman has" repackaged the same conduct into two different theories," which is insufficient to avoid the application of § 1500's jurisdictional bar. See id. at 1364; see also Trusted Integration, 659 F.3d at 1168 ("the legal theories underlying the asserted claims are not relevant to this inquiry.").

IV. Conclusion

For the foregoing reasons, the court finds that it lacks jurisdiction over plaintiff's claims under § 1500. Therefore, the court has no alternative but to sua sponte dismiss plaintiff's case for lack of subject-matter jurisdiction. The Clerk of Court shall enter judgment DISMISSING plaintiff's complaint without prejudice. Once judgment is entered this matter is considered closed. The Clerk's Office is directed to return any future filings not in compliance with this court's rules to plaintiff, unfiled, without further order.

IT IS SO ORDERED.

PATRICIA CAMPBELL-SMITH
Judge