# In the United States Court of Federal Claims

No. 17-179 C
Filed: March 29, 2024

|  | ) |
|---|---|
| JULIE BEBERMAN, | ) |
|  | ) |
|              *Plaintiff*, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
|              *Defendant*. | ) |
|  | ) |

*Julie Beberman*, pro se.

*Margaret Joy Jantzen*, U.S. Department of Justice, Civil Division, *attorney of record*, for the United States.

**ORDER**

      Julie Beberman began working for the United States Department of State as a Foreign Service Officer in March 2011. ECF No. 47 ¶ 6. On the same day, John Elliott began in the same role, assigned to a different post. *Id.* Throughout their assignments, Beberman and Elliott received comparable pay and benefits. *Id.* at ¶ 30. Beberman and Elliott were also denied tenure by the Commissioning and Tenure Boards at the same time in the summers of 2014 and 2015, as well as the winter of 2015. *Id.* at ¶ 31. Because they were on the same timeline, both Beberman and Elliott ended their limited career appointments on March 27, 2016. *Id.* at ¶¶ 32, 38. Up to this point, there is no allegation that Beberman and Elliot were treated disparately.

      This is where Beberman's and Elliot's paths diverge. After she was denied tenure, Beberman received a "Separation Order," and "the State Department directed her to return to the United States to work at the State Department's headquarters in Washington, D.C." *Id.* at ¶¶ 33, 38. Elliott remained overseas, however, where he "received the same benefits package as he had received before he was denied tenure." *Id.* at ¶ 34. Later, Elliott received a "Permanent Change of Station Order," which included an overnight stop when traveling back stateside, home leave, and other benefits. *Id.* at ¶¶ 47-48.

      Because of these alleged differences in treatment, Beberman filed various lawsuits alleging violations of several employment-related statutes.[1] Of note here, on May 9, 2014,

---

[1] *See Beberman v. Sec'y, U.S. Dep't of State*, No. 21-1566, 2022 WL 683363, at *1 n.1 (3d Cir. Mar. 8, 2022) (listing Beberman's pending lawsuits).

Beberman filed an action in the United States District Court for the District of the Virgin Islands against the State Department.  *See* Complaint, *Beberman v. U.S. Dep't of State*, 1:14-cv-00020 (D.V.I. May 9, 2014), ECF No. 1.  In that case, Beberman claimed the State Department violated Title VII, the Age Discrimination in Employment Act ("ADEA"), and other statutes by its disparate treatment of her and Elliott after denying both of them tenure.  *Id.*  The district court dismissed the majority of her claims early in the case, and later granted summary judgment to the State Department on her remaining claims.  *See generally* ECF No. 68-1.  The Third Circuit affirmed the district court's decisions, and specifically concluded that Elliott "was not similarly situated to Beberman for purposes of the remain-at-post decision."  *Beberman v. Sec'y, U.S. Dep't of State*, No. 19-2745, 2022 WL 2037944 at *5 (3d Cir. June 7, 2022).

On February 6, 2017, Beberman filed this action alleging violations of the Equal Pay Act ("EPA").  ECF No. 1.  Initially, this Court[2] dismissed Beberman's claims for lack of subject-matter jurisdiction under 28 U.S.C. § 1500 because of an earlier action she filed in the district court.  ECF No. 18.  The Federal Circuit reversed the dismissal and remanded this case for further proceedings.  ECF No. 21.  Upon remand, and because of the relationship of the claims between this case and Beberman's additional case in the district court, the Court stayed the case pending the outcome of Beberman's appeal in the Third Circuit.  ECF No. 58.  After the appeal concluded, the Court lifted the stay.  ECF No. 65.  Once the stay was lifted, the Government filed a Motion to Dismiss, ECF No. 68, asking the Court to dismiss Beberman's case "because it relies on a factual and legal issue that has already been litigated in [her] district court litigation[.]"  ECF No. 68 at 1.

I.    **Legal Standard**

"'A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the plaintiff do not entitle him to a legal remedy.'"  *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006) (quoting *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000)).  As the Supreme Court has explained, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  And to be "plausible on its face," it "does not need detailed factual allegations."  *Twombly*, 550 U.S. at 555; *see also Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (Rule 8 "does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face.").  In other words, the complaint must contain enough detail "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citations omitted).  "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim."  *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) (citations omitted).  Nevertheless, the Court "must assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant."  *United Pac. Ins. Co.*, 464 F.3d at 1327-28 (quoting *Anaheim Gardens v. United States*, 444 F.3d 1309, 1314-15 (Fed. Cir. 2006)).

A Rule 12(b)(6) dismissal may be appropriate based on an affirmative defense such as issue preclusion.  *Larson v. United States*, 89 Fed. Cl. 363, 382 (2009), *aff'd*, 376 F. App'x 26

---

[2] This case was initially assigned to a different judge on this Court.  *See* ECF No. 60.

(Fed. Cir. 2010). "Affirmative defenses that have been considered under a Rule 12(b)(6) motion to dismiss include, among others, 'various types of estoppel' and 'the barring effect of [preclusion].'" *Corrigan v. United States*, 82 Fed. Cl. 301, 304 (2008) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2008)).

## II.     Discussion

Issue preclusion, or collateral estoppel, is appropriate where (1) the issue is identical to one decided in the first action; (2) the issue was actually litigated; (3) resolution of the issue was essential to a final judgment; and (4) plaintiff had a full and fair opportunity to litigate the issue in the first action. *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994). The party asserting issue preclusion bears the burden of establishing each required element. *Jones v. United States*, 846 F.3d 1343, 1361 (Fed. Cir. 2017); *see also Silver State Land LLC v. United States*, 148 Fed. Cl. 217, 263 (2020). The first logical question is whether the district court and Third Circuit's holdings that Elliot is not a valid comparator for Title VII and ADEA purposes present the identical question as before the Court here—whether Elliot is a valid comparator for EPA purposes.

It is undisputed that Beberman's claim is not a run-of-the-mill EPA action. Under a traditional EPA claim, a plaintiff must show that she and another employee of the opposite sex were *paid* differently for doing work that requires "equal skill, effort, and responsibility, and which [was] performed under similar working conditions[.]" 29 U.S.C. § 206(d). Put differently, to establish a prima facie case under the EPA, "a plaintiff must show that (1) an employer pays different wages to employees of the opposite sex, (2) for equal work requiring equal skill, effort and responsibility, (3) performed under similar working conditions." *Cooke v. United States*, 85 Fed. Cl. 325, 341 (2008). In her Amended Complaint, Beberman attempts to show that she and Elliott—her proposed comparator—were *treated* differently. ECF No. 47. But the alleged difference in treatment is not in wages, per se; rather, it is in the decisions to grant Elliott an extension of service but recall Beberman to Washington, D.C. immediately.[3] The specifics of this case thus bring the Court into uncharted waters.

The Government argues that although Beberman's claim is unique, one narrow factual dispute has been resolved by the prior litigation. Namely, the district court and Third Circuit rejected Beberman's use of Elliott as a comparator for her Title VII and ADEA claims. ECF No. 68 at 9.[4] The district court and Third Circuit unequivocally held that under the appropriate tests applicable to Title VII and ADEA claims, Elliott "was not similarly situated to Beberman for purposes of the remain-at-post decision." ECF No. 68-1 at 59. To reach that conclusion, those courts relied on the Third Circuit's test for evaluating comparators. *See* ECF No. 68-1 at 24 (citing *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009)). Therefore, according to the Government, the issue of Elliott's status as an appropriate comparator has been

---

[3] The district court and Third Circuit referred to these as the "remain-at-post decisions." ECF No. 68-1 at 59.

[4] ADEA claims are examined under the same burden-shifting framework as used in Title VII cases. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 120 (1985).

3

decided such that issue preclusion bars Beberman's re-litigation of that issue here.  Of course, if Beberman cannot rely on Elliott as a comparator, then her complaint falls apart.

But the standards for evaluating the sufficiency of a comparator under Title VII/ADEA and those applicable to the EPA are different.  *See, e.g.*, *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 598 (11th Cir. 1994) (comparing the EPA and Title VII analysis and concluding the "standard for 'similarity' in Title VII cases is relaxed") (citation omitted); *Alexander v. Marriott Int'l, Inc.*, No. RWT 09-CV-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011) ("[T]he level of 'similarity between male and female-occupied jobs' is more 'relaxed' under Title VII than under the Equal Pay Act[.]") (citation omitted); *Clark v. Vivint Solar, Inc.*, No. 2:17-CV-00144-JNP-JCB, 2020 WL 6873942, at *12 (D. Utah Nov. 23, 2020) ("[J]ob similarity requirements under Title VII are less stringent than under the Equal Pay Act.").  Thus, the question of whether Elliott is an appropriate comparator for Title VII/ADEA does not necessarily resolve whether he is a proper comparator for the EPA.  *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015) (holding that different statutory schemes must have the same legal standards before issue preclusion may apply).  Indeed, other circuits have concluded that EPA's framework is distinct from that of Title VII and ADEA.  *See, e.g.*, *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006); *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992).  Here, the Government conceded at oral argument that the EPA standards are not fully encompassed by the standards set out in Title VII/ADEA precedent.  In other words, if both the EPA standard and the Title VII/ADEA standard are put on a Ven diagram, their circles may overlap, but the EPA standard is not fully enclosed within the Title VII/ADEA standard.  Therefore, the resolution of the comparator question for Title VII/ADEA purposes does not necessarily resolve the question for EPA purposes.

In the end, "[p]recedent cautions that res judicata is not readily extended to claims that were not before the [prior] court[.]"  *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1557 (Fed. Cir. 1996).  That means precedent also "weighs heavily against denying litigants a day in court unless there is a *clear* and *persuasive* basis for that denial."  *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1557 (Fed. Cir. 1996) (emphasis added); *see also United States v. Creek Nation*, 476 F.2d 1290, 1299 (Ct. Cl. 1973) ("The doctrine of collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice.").  The Government has not carried its burden to show that Beberman's Title VII and ADEA litigation necessarily precludes, as a matter of law, her assertion of Elliott as a valid comparator for purposes of her EPA claim.

For the avoidance of doubt, this Court is not expressing an opinion on whether Elliott is a valid comparator under the EPA.  Indeed, the Government makes some compelling arguments that he is not.  Instead, the Government moves the Court to dismiss this case for issue preclusion.  Given the novelty of the claim here and the different legal question raised in Beberman's prior litigation, however, the Court is simply unable to dismiss this action due to issue preclusion.  As a result, whether Elliott is a proper comparator for Beberman's EPA claim is a question for another day.

## III.    Conclusion

For the foregoing reasons, the Court **DENIES** the Government's Motion to Dismiss, ECF No. 68.

5

It is so ORDERED.

                                                  <u>s/ Edward H. Meyers</u>
                                                  Edward H. Meyers
                                                  Judge